Gregory G. Smith
Smith Oblander Meade & Mitcham, P.C.
104 2nd Street South, Suite 400
PO Box 2685
Great Falls, MT  59403-2685
Telephone: (406) 453-8144
gregg@bigskylaw.com
*Attorneys for Plaintiff, Darla L. Kelman*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| DARLA L. KELMAN,<br><br>    Plaintiff,<br><br>v.<br><br>SYNCHRONY FINANCIAL, a Delaware Corporation,<br><br>    Defendant. | Cause No: CV-24-113-GF-JTJ<br><br>**COMPLAINT AND JURY DEMAND** |

COMES NOW the Plaintiff, Darla Kelman, ("Kelman") and for her Complaint against Synchrony Financial ("Synchrony"), complains and alleges as follows:

## PARTIES

1.     Kelman is an individual residing in Great Falls, Cascade County, Montana, and a citizen of the state of Montana.

2. Kelman alleges, upon information and belief, that Synchrony Financial is a Delaware corporation with its principal place of business in Stamford, Connecticut. At all relevant times Synchrony was authorized to and did conduct financial services business within the State of Montana.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C.A. § 1331, this Court has subject matter jurisdiction over this action as a federal question matter arising under the laws of the United States. Kelman's claims arise under and are based on the Fair Credit Billing Act, 15 U.S.C. § 1666 ("FCBA"). Kelman and Synchrony are parties to a contract that was to be and was satisfactorily performed by Kelman in Cascade County, Montana. Synchrony has failed to perform its obligations owed to Kelman in Cascade County, Montana, and has violated the FCBA with respect to Synchrony's dealings with Kelman which are the subject of this action.

4. Personal jurisdiction exists over Synchrony, which conducts business in the state of Montana, and whose business activities in Montana give rise to Kelman's claims.

5. Venue is proper in the Great Falls Division because Kelman at all times resided within the Division, and the acts and omissions of Synchrony that are the subject of this Complaint occurred and caused damage to Kelman within this Division. L.R. 3.2 (b).

## GENERAL ALLEGATIONS

6. Kelman is the obligor pursuant to a Sam's Club credit card issued and administered by Synchrony.

7. Beginning in August 2023, Kelman noticed fraudulent charges on her credit card account with Synchrony, and she promptly reported the fraudulent charges to Synchrony. These charges, in the amount of $888.75, were credited back to the account.

8. In September 2023, Kelman reported additional fraudulent charges of $423.00 on her credit card account with Synchrony. Kelman has received no indication that these charges were ever credited back to the account.

9. In October 2023, Kelman reported fraudulent charges of $4,176.44 on her credit card with Synchrony. The amount of $3,661.46 was ultimately credited back to Kelman, leaving $514.98 which was not credited back. Ultimately, Kelman determined that two of the charges she suspected as fraudulent, to Shein.com in the total amount of $395.90, were actually legitimate charges, leaving the sum of $119.08 in fraudulent charges that were not credited back to her.

10. Then, in November 2023, Kelman received a November 9, 2023, letter from Synchrony. In this letter, Synchrony indicated that it was "unable to approve" her fraudulent charge claims because "the purchased item(s) were shipped to [Kelman's] address." This statement was false and made without Synchrony having a factual

basis to believe it was true. For example, one of the charges, to DreambodyStudio.com, in Atlanta, Georgia, in the amount of $2,500.00, was apparently for spa equipment which Kelman never ordered.

11.  When Kelman received the November 9, 2023, letter from Synchrony, she promptly contacted the bank and disputed the bank's improper conclusion that these charges were not fraudulent. Kelman explained that the charges were from other states, and that she could prove she was in Montana at the time of the charges. Following Kelman's detailed explanation given to Synchrony, it was Kelman's understanding that, after consulting with the merchants, Synchrony accepted her explanation and removed or wrote off the disputed charges.

12.  It appears that there were two credits to Kelman's credit card accounts against the fraudulent charges, and initially one was in error. The sum of $3,661.46 was credited in the October 2023 statement. Then, on the November 2023 statement, the additional sum of $3,301.15 was credited, which Kelman suspects were purchases of $3,144.98 and interest of $156.17. Kelman has never received a detailed explanation of these figures.

13.  Then, in January 2024, the sum of $3,144.98 was added back to Kelman's balance, which seems to be reversing the earlier credit from November, which appears to have been made in error. However, on that same January 2024 statement,

an additional, unauthorized sum of $2,500.00 was inexplicably added back to her account balance as well, without explanation.

14. Kelman is owed at least an additional credit of $3,042.08 ($2,500.00 + $423.00 + $119.08). She promptly raised this issue with Synchrony, through counsel, by letter of July 19, 2024.

15. Throughout her correspondence with Synchrony, Synchrony has repeatedly referred to various account numbers that are different from the account number assigned to Kelman's credit card, thus rendering any explanation indecipherable. This issue was raised in the July 19, 2024, letter to Synchrony as well.

16. By letter of July 25, 2024, Synchrony denied Kelman's fraud claim but failed and/or refused to address the specifics of the allegations raised in the letter. Further, the Synchrony letter discussed four (4) different account numbers but ignored Kelman's pleas to relate the specific numbers to specific credit card account numbers.

17. Ultimately, Kelman, through counsel, was able to communicate by telephone with a Synchrony representative on September 12, 2024. In that discussion, Synchrony stated that it had no way to review the specifics of the billing errors and directed Kelman to resubmit the entire disputed matter through its fraud department, the same department that had previously failed and/or refused to specifically address and/or rectify the problems.

18. Kelman had a significant sum of "Sam's Cash" built up, and it appears that more than $600.00 of this credit has vanished without explanation. Synchrony has ignored Kelman's request for an explanation for the removal or disappearance of her "Sam's Cash" credit.

19. Kelman has no desire to engage in litigation over this matter, but Synchrony has failed to respond in good faith and address Kelman's specific allegations, instead relying on conclusory statements referencing account numbers that bear no relationship to Kelman's credit card account numbers.

20. Synchrony's conduct throughout this matter has reflected a conscious or reckless disregard for Kelman's rights. Through communications with Kelman and her counsel Synchrony had knowledge of facts concerning the true nature of the disputed charges. Despite such knowledge, Synchrony disregarded such facts and the truth of the fraud charges, creating a high probably of harm to Kelman. Synchrony deliberately pursued a course of conduct that was likely to cause harm to Kelman, resulting in violation of Kelman's rights, including violation of the FCBA.

21. Synchrony's conduct has been, at best, conduct pursued in bad faith, and essentially creates a 'brick wall' that is completely impenetrable by the average consumer.

22. Synchrony violated the FCBA in various ways that include, but are not limited to the following: failing to correct the noted billing errors; failing to conduct a

reasonable investigation of the facts surrounding the disputed fraud charges; failing to conduct an investigation reasonably required to determine whether goods or services charged against Kelman's account were actually delivered to Kelman; and engaging in a myriad of acts, omissions and errors that constitute unfair, deceptive, or abusive acts and practices, in violation of 12 U.S.C. § 5531. Such acts and practices violate the federal regulations prescribed by the Consumer Financial Protection Bureau.

23. Due to Synchrony's violation of its obligations under 15 U.S.C. § 1666, Kelman is entitled to file this action pursuant to 15 U.S.C. § 1640 and recoverable all damages available under applicable law.

WHEREFORE, Kelman prays for the following relief:

1. For an award of Kelman's actual damages for Synchrony's refusal to comply with the Fair Credit Billing Act in at least the amount of $3,042.08, together with any finance charges charged on such amount;

2. For imposition of the maximum allowable penalty under 15 U.S.C. § 1640, not to exceed $5,000.00;

3. Forfeiture of Synchrony's right to collect sums Synchrony contends are owed, including finance charges thereon, pursuant to 15 U.S.C. § 1666(e);

4. For punitive damages to the extent allowed by law.

5. For Kelman's attorney fees and costs in bringing this matter; and

6. For such other and further relief as this Court deems just and proper.

Respectfully submitted this 13th day of December, 2024.

                Smith Oblander Meade & Mitcham, PC

                /s/ Gregory G. Smith
                Gregory G. Smith
                P.O. Box 2685
                Great Falls, Montana 59403-2685
                Phone: (406) 453-8144
                Fax: (888) 402-0579
                Email: gregg@bigskylaw.com
                *Attorneys for Plaintiff Darla Kelman*

## JURY DEMAND

COMES NOW, the Plaintiff Darla Kelman, and does hereby demand a trial by jury of all issues triable by a jury.

Respectfully submitted this 13th day of December, 2024.

*/s/ Gregory G. Smith*
Smith Oblander Meade & Mitcham, PC
By: Gregory G. Smith